Berdine THOMAS and Gulf Insurance
Company, Appellants,

v.

Arthur JENKINS, Appellee.

No. 8275.

Court of Civil Appeals of Texas,
Amarillo.

May 22, 1972.

Rehearing Denied June 19, 1972.

Gibbins & Spivey, Broadus A. Spivey, Austin, John C. Sims, Lubbock, for appellants.

Evans, Pharr, Trout & Jones, John A. Flygare, Lubbock, for appellee.

REYNOLDS, Justice.

Appeal has been perfected from that portion of the trial court's judgment setting aside the jury's special issue answer awarding damages for loss of plaintiff's earning capacity in the future. Reversed and rendered.

Berdine Thomas instituted suit against Arthur Jenkins to recover his damages resulting from an intersection collision between two automobiles driven by these parties. Gulf Insurance Company intervened, seeking subrogation to the extent of $12,650.50 paid to Thomas as workmen's compensation. Trial was to a jury whose answers to the special issues submitted found Jenkins liable and awarded Thomas damages totalling $15,550.00. The total award consisted of $550.00 for past loss of earnings, $3,750.00 for loss of earning capacity in the future, $4,000.00 for past, and $7,000.00 for future, physical pain and

mental anguish, and $250.00 for past medical expenses.

Thomas and Gulf moved for judgment on the verdict; Jenkins moved the court to disregard the jury's answer to special issue no. 11(b), the one finding $3,750.00 for loss of future earning capacity, on the ground that there was no evidence to support the finding. The trial court granted Jenkins' motion, set aside the jury's answer to special issue no. 11(b), and granted Thomas and Gulf's motion to the extent of entering judgment on the remainder of the jury verdict, decreeing that Gulf, as subrogee, recover from Jenkins the sum of $11,800.00, and that Thomas take nothing.

Appellants, Berdine Thomas and Gulf Insurance Company, have pursued this appeal from that portion of the judgment denying recovery for the $3,750.00 loss of Thomas' future earning capacity as found by the jury. Appellants present two assignments asserting that the trial court erred in disregarding the jury's answer to special issue no. 11(b) because there was some evidence to support the jury's finding. Appellee Jenkins has joined the issue, contending that the trial court correctly acted since there was no evidence to support the jury's answer. The remainder of the trial court proceeding is not questioned.

Rule 301, Texas Rules of Civil Procedure, authorizes the trial court, upon motion, to disregard any special issue finding that has no support in the evidence, i.e., if the evidence is legally insufficient, but the court may not disregard the jury's answer merely because the evidence is factually insufficient. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965). In deciding whether there is legally sufficient evidence to support the jury's finding, as contended for by appellants, the evidence must be viewed in the most favorable light in support of the jury's finding, indulging every legitimate conclusion in its favor, and all adverse evidence must be disregarded. Pickens v. Harrison, 151 Tex. 562, 252 S.W.2d 575 (1952).

In compliance with these legal principles, appellants contend that there was probative evidence adduced establishing a monetary measure of Thomas' earning capacity prior to his injuries which is sufficient to support the jury's answer. Appellee submits that the trial court's judgment must be upheld because there was no evidence to support the finding of future loss of earning capacity since Thomas presented no evidence of present earnings from the businesses in which he was engaged at the time of trial. If evidence legally sufficient to support the jury's finding is to be found in the record, it must be found in the testimony of Thomas and in the reasonable inferences properly drawn therefrom. Viewed most favorably in support of the challenged jury finding, the evidence may be summarized fairly as follows:

Thomas, sixty-three years of age at the time of the trial on October 18, 1971, did not proceed past the eighth grade in school, has no specialized training and always had worked at common labor. Other than being afflicted with a hearing impairment and a limp resulting from a leg twice broken some years before which caused him to miss some work then, Thomas otherwise was able to and did perform manual labor. On September 1, 1968, the date of the collision, Thomas was then and had been for several years employed by a retirement home for elderly ladies. His employment consisted of driving a bus to transport the ladies, washing dishes, yard work and "a lot of other duties." He was paid $68.00 a week. As a result of the accident, Thomas suffered a hip injury and disabling and permanent injuries to his shoulder, from which he still suffers pain. Approximately 30 days after the accident, he resumed his employment, washing dishes and driving the bus, but he could not perform "a lot of other duties" he previously did although he tried. With assistance from other personnel, he worked for about a year, during which time he was given a small raise in pay, and then left the employment. He worked some two weeks for a construction firm, driving a

truck, but the work hurt him, and his employment was terminated for lack of the firm's work. Since that time he has not done any work for anyone else because he knew he "wasn't able to go to work," although he applied for employment but could not find any work that he could perform. Thomas tried to work at self-employment, expanding the raising of pigs which he had been engaged in for some undetermined period of time prior to his injuries, but "finally got to where I couldn't do that," although he still had some pigs. For six or eight months previous to trial date, Thomas had been operating a drive-in barbeque restaurant assisted by his daughter-in-law, but the extent of his participation was not recorded. He never is free from pain which prevents his working, and he has a problem with one arm in reaching down to pick up anything. Thomas stated that he never would be able to do manual work again, including the work he did at the retirement home.

This evidence, viewed as required from the viewpoint of legal sufficiency rather than from the aspect of whether it is factually sufficient, is of sufficient probative value to support the jury's finding of loss of future earning capacity in the sum of $3,750.00. The fact that Thomas returned to his former employment where he had been engaged for years and tried to work at the same job, earning as much or more than he did prior to his injuries, does not bar him from recovering for loss of earning capacity. Mikell v. La Beth, 344 S.W.2d 702 (Tex.Civ.App.—Houston 1961, writ ref'd n.r.e.)

Although the extent of a diminished earning capacity can be shown best by a comparison of actual earnings before and after the injury, McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710 (1943), each case must be judged upon the facts peculiar to it, and the damages proved with that degree of certainty of which the case is susceptible. Dallas Consolidated Electric St. Ry. Co. v. Motwiller, 101 Tex. 515, 109 S.

W. 918 (1908). Thomas introduced evidence of his earning capacity from labor other than self-employment prior to his injuries of $68.00 a week, which, because of his injuries, he was not thereafter able to earn. The jury reasonably could, and was entitled to, infer from the evidence that Thomas' capacity to earn a monetary return from raising pigs was no greater after his injuries, especially since he could not perform the work required, than prior to his injuries. The fact that Thomas did not produce any evidence of self-employment earnings, if any, from the barbeque business would not deprive him of all recovery. The nature, extent and duration of the physical injuries suffered by Thomas were of a character to support the jury's conclusion of his diminished capacity to earn money from the work he formerly was capable of doing and was no longer able to perform; the loss in wages from that labor was one of the elements the jury was rightfully permitted to determine, and it did determine and assess a future loss of earning capacity in an amount only slightly more than one year's previous earnings. The evidence justified the submission of and the answer to special issue no. 11(b) since the jury was "in possession of facts from which they" could and did "determine the extent of impairment of earning capacity." Dallas Consolidated Electric St. Ry. Co. v. Motwiller, supra. Here, the jury was not only the judge of the facts and circumstances proven but could also draw reasonable inferences and deductions from the evidence, and its finding may not be disregarded under Rule 301, T.R.C.P., because the record discloses some evidence of probative value which, with proper inferences drawn therefrom, will reasonably support the finding. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273 (1958).

The application of these legal principles to the operative facts requires that appellants' two assignments of error be, and they hereby are, sustained. That portion of the trial court's judgment disregarding the jury's answer to special issue no. 11(b) and disallowing the $3,750.00 award for

Thomas' loss of future earning capacity is reversed, and judgment is here rendered that appellants recover from appellee Arthur Jenkins the additional jury award of $3,750.00, apportioned $850.50 to appellant Gulf Insurance Company for the balance of its subrogation claim, and $2,899.50 to appellant Berdine Thomas, with interest thereon at the rate of six per cent (6%) per annum from October 16, 1971, the interest date fixed in the trial court's judgment, until paid. The remainder of the trial court's judgment, not having been appealed, has become final.