TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00032-CV






Housing Authority of the City of Crystal City, Texas, Appellant



v.



Ricardo S. Lopez, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT


NO. 94-04098, HONORABLE CARL C. ANDERSON, JUDGE PRESIDING 






 Ricardo Lopez sued the Housing Authority of the City of Crystal City, Texas, alleging
retaliatory discrimination in violation of the Whistleblower Act. (1) The trial court rendered judgment on a jury
verdict, awarding Mr. Lopez $28,549.57 in past lost earnings, $10,000 in future lost earning capacity,
$25,000 for mental anguish, and $100,000 in exemplary damages. The Housing Authority appeals, raising
legal and factual sufficiency points of error. We will reverse and render in part, remand in part, modify the
judgment in part, and affirm the judgment as modified.

BACKGROUND

 Mr. Lopez was employed by the Housing Authority as Assistant Executive Director. 
Shortly after requesting a legal clarification from the United States Department of Housing and Urban
Development (HUD) regarding a possible conflict of interest involving the Housing Authority, Mr. Lopez
was downgraded in title and authority and given an extremely poor evaluation. Sometime later he reported
to HUD three possible violations by the Housing Authority of federal and local rules. Within less than a
week he was demoted to a position earning less than half of his previous salary. Mr. Lopez resigned shortly
thereafter and remained unemployed for five and a half months. He sued the Housing Authority alleging
a violation of the Whistleblower Act.


STANDARD OF REVIEW

 In six points of error the Housing Authority contends the trial court erred because there was
no evidence or, in the alternative, insufficient evidence to support the jury verdict. In deciding a no-evidence point, we consider only the evidence and inferences tending to support the finding of the trier of
fact and disregard all evidence and inferences to the contrary. We will uphold the finding if more than a
scintilla of evidence supports it. See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.
1995). In deciding a factual-sufficiency point we consider and weigh all the evidence and should set aside
the judgment and order a new trial only if the judgment is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). 
Ultimately this appeal turns on whether the record supports the jury verdict in favor of Mr. Lopez.


DISCUSSION

Violation of the Whistleblower Act

 In point of error one the Housing Authority contends the evidence is legally and factually
insufficient to support the jury's finding that it retaliated against Mr. Lopez because of his reports to HUD. 
The Whistleblower Act provides for the recovery of damages and other relief when a governmental entity
discriminates against a public employee who in good faith reports a violation of law to an appropriate law
enforcement agency. Former Act §§ 554.002, .003. If the employer's discriminatory act occurs within
ninety days of the employer's report it is presumed, subject to rebuttal, that the wrongful act was committed
because the employee made the report. Id. § 554.004. 

 The relevant time period spans only four months, beginning in September 1993 and ending
with Mr. Lopez's resignation in January 1994. Prior to this period Mr. Lopez had been employed by the
Housing Authority for six years; for four of those years he held the position of Assistant Executive Director
earning an annual salary of $22,800. By the time he resigned, his position had been downgraded to Clerk
(Clerk of the Works) and his salary reduced to $10,400. On September 28, the Housing Authority
Board voted to award a contract to a general contractor whose proposed subcontractor was the brother
of the Chairperson of the Board. The following day Mr. Lopez called HUD, the agency which oversees
and subsidizes the Housing Authority, informing HUD of a potential conflict of interest and requesting
clarification. HUD's legal counsel responded that because the Chairperson had abstained from voting,
there were no federal concerns but a legal opinion regarding state law and local regulations would be
necessary. Mr. Lopez relayed this information to the Interim Executive Director, and reminded her again
on October 22 to seek legal advice. On November 12, Maria Farias assumed the position of Executive
Director. Less than a week later, the Chairperson wrote Ms. Farias requesting clarification regarding the
possible conflict and noting Mr. Lopez's concerns. Ms. Farias gave Mr. Lopez a copy of this letter. On
December 9, he again advised the Board that according to HUD a legal opinion was necessary to resolve
any possible violation of state or local regulations; he sent a copy of this letter to HUD. On January 6, the
Chairperson sent a letter to HUD, urging HUD to provide the legal clarification because the Housing
Authority did not have the funds to seek local counsel. Expressing concern for her brother, the
subcontractor who had not yet been paid, the Chairperson stated she saw no conflict of interest and
suggested that prompt payment outweighed resolution of the conflicts issue. 

 Shortly after Ms. Farias arrived on November 12, she proposed increasing her salary from
$32,000 to $55,000. Mr. Lopez informed her that a comparability study was required by HUD before
her salary could be increased. She replied that she would consider it, but to his knowledge the study was
never done. On November 24, the Board voted to change Mr. Lopez's title from Assistant Executive
Director to Financial Officer. Although his salary remained the same, the position was lower in the
agency's managerial hierarchy and Mr. Lopez no longer exercised as much authority at the agency. Before
obtaining HUD approval of the title change the new Director effectively removed him from his duties as
Assistant Executive Director. Mr. Lopez was not even informed of the change until December 7, a week
after she downgraded his position. 

 On December 12, less than a month after the new Director began and just forty-five days
after Mr. Lopez first reported to HUD, Ms. Farias conducted a written evaluation that recommended
demoting or dismissing Mr. Lopez because his work rated only "satisfactory," "below expectations," or
"unsatisfactory." Copies were given to Mr. Lopez and the Board. At trial there was testimony that Mr.
Lopez had consistently received outstanding evaluations in the past. In fact, he had been seriously
considered for the position of Executive Director at least two times, including most recently when Ms.
Farias was chosen instead.

 The juncture occurred when Mr. Lopez called HUD on January 4, 1994, reporting several
possible violations of federal and local rules, including: (1) the Director was living in the housing project
in a rent-free unit which HUD had not approved; (2) the Board had voted to waive the usual probationary
period for benefits for her without following the proper procedure; and (3) the Board had voted to increase
her salary without conducting a comparability study. Mr. Lopez had discussed all three concerns with the
Director, Ms. Farias, before he notified HUD. Coincidentally his report to her came just two weeks before
he received the poor evaluation. On January 10, he was demoted to Clerk at an annual salary of $10,400. 
After his appeal to the grievance committee was unsuccessful, Mr. Lopez resigned on January 23.

 At trial the jury charge, accompanied by proper instructions, asked, "[d]id the Housing
Authority of the City of Crystal City, Texas retaliate against Ricardo Lopez for reporting in good faith to
an appropriate law enforcement authority what he believed to be a violation of law?" The jury answered
yes. Whether we look at all the evidence or only that evidence favorable to the jury finding, we find the
jury could have concluded that the Housing Authority discriminated against Mr. Lopez because he reported
agency violations to HUD. Mr. Lopez was given a poor evaluation and his title changed less than two
months after he reported the first violation to HUD. Less than a week after Mr. Lopez reported the other
three violations, he was demoted to Clerk, incurring a substantial pay cut. Under the statute the jury was
free to presume a causal link existed between the reports and the discriminatory acts. Although there was
testimony that Mr. Lopez had neglected to take care of certain agency business, Mr. Lopez testified that
some of the tasks were not performed because he was out of the office on approved leave and that
obstacles imposed by Ms. Farias herself prevented him from completing other tasks. The jury could have
chosen to believe Mr. Lopez and concluded that the basis given for his demotion was pretextual. A witness
for the Housing Authority implied that Mr. Lopez was demoted because he was rude, refused to do his
work, and had "an attitude" regarding Ms. Farias. On cross-examination the attorney for Mr. Lopez asked
this witness:


Q: . . . What did you witness, personally, that makes you testify that way?


A: In some of the -- sometime -- a few of the meetings we had in the office, staff
meetings, he was always contradicting what [the Executive Director] had to say;
what had to be done.


Q: Telling her that she wasn't doing it by the rules and regulations?


A: Yes.



The jury could have chosen to believe the actual testimony rather than the implication. We hold there is
some evidence to support the jury's finding of retaliation and that finding is not so contrary to the
overwhelming weight of the evidence as to be clearly unjust. We overrule point of error one because the
evidence is both legally and factually sufficient to support the jury verdict.


Past Lost Earnings

 The Housing Authority claims in point of error two that the trial court erred in rendering
judgment for past lost earnings in the amount of $28,549.57 because the evidence did not support such a
finding. Past lost earnings are the actual lost income due to the retaliation minus any benefits received, such
as unemployment or income from a new job; the amount is calculated from the time of retaliation to the date
of trial. Mr. Lopez introduced in evidence a chart listing his past lost earnings as (1) lost salary
($5,687.43); (2) unpaid compensation time ($396.06); (3) unpaid vacation time ($1,618.40); and (4) lost
benefits ($20,847.68). Mr. Lopez calculated his lost salary based on the week he worked at the Housing
Authority at a decreased salary plus income lost during his five and a half months of unemployment, less
unemployment benefits. Mr. Lopez did not testify as to his new salary and, therefore was unable to
calculate any dollar amount lost between the time he began his new job and the date of trial. He also
submitted evidence which revealed that the agency calculated his accumulated compensation and vacation
time using his reduced salary after the demotion rather than his former salary as Assistant Director. Mr.
Lopez also testified that he lost $1100 in medical and life insurance benefits, as part of lost benefits, the
amount he would have received had he not been demoted. Those amounts for which Mr. Lopez
introduced sufficient evidence total $8801.89.

 While Mr. Lopez' testimony was sufficient to support the monetary awards for lost salary,
unpaid compensation time, unpaid vacation time, and insurance benefits, we find little evidence to uphold
the entire award of $20,847.68 for lost benefits. Under lost benefits, Mr. Lopez sought damages for
retirement, medical and life insurance, social security, vacation, sick leave, holidays, and annual salary
adjustment. Mr. Lopez did not provide a monetary breakdown of these elements and, thus, failed to
provide a sufficient basis for arriving at this total for lost benefits. Furthermore, we decline to uphold any
damages for loss of an "annual salary adjustment," which is a bonus given at the discretion of the Housing
Authority. We find the evidence both legally and factually insufficient to support an award of $20,847.68
for lost benefits with the exception of $1,100 in insurance. While we uphold $8801.89 in damages for lost
salary, underpaid compensation and vacation time, and lost health and life insurance benefits, we sustain
the second point of error as to the balance of $19,747.68 in lost benefits.


Future Lost Earning Capacity

 In point of error three the Housing Authority claims the trial court erred in rendering
judgment for future lost earning capacity in the amount of $10,000 because the evidence does not support
such a finding. Recovery for future lost earning capacity is available under the Whistleblower Act. See
City of Ingleside v. Kneuper, 768 S.W.2d 451, 457 (Tex. App.--Austin 1989, writ denied). However,
the amount awarded must be based on something more than mere conjecture and must be "proved with
that degree of certainty of which the case is susceptible." Id. at 458-59 (quoting McIver v. Gloria, 169
S.W.2d 710, 712 (Tex. 1943); see also Booney v. San Antonio Transit Co., 325 S.W.2d 117, 121
(Tex. 1959). After his demotion Mr. Lopez's salary was reduced to $10,400. The jury may have
surmised that such a demotion placed Mr. Lopez at a disadvantage in the job market, thereby subjecting
him to future losses. On the other hand, Mr. Lopez had every opportunity to present evidence illustrating
the exact disadvantage he suffered in lost future earnings as a result of his demotion. He testified that, after
his resignation, five and half months passed before he became employed again, but conspicuously failed
to testify as to his new salary. Without any evidence that his earning capacity had in fact been diminished,
the jury was left to merely speculate about Mr. Lopez's future loss of earning capacity. Facts existed but
were not revealed which could have provided the jury a basis for an intelligent answer. Because Mr. Lopez
failed to testify as to any basis for loss of future income, we hold there was legally and factually insufficient
evidence to support the jury award for future lost earning capacity.

 Mr. Lopez's claim that the $10,000 represents the salary decrease from Assistant Director
(later Financial Officer) to Clerk is inapplicable here. Lost earning capacity addresses that which he will
be unable to make in the future due to the retaliatory demotion. Under his theory, the $10,000 represents
lost wages; these are an element of past lost earnings. Mr. Lopez has already received damages for the
lost salary caused by his pay cut and unemployment under his claim for past lost earnings. We sustain point
of error three.



Mental Anguish

 The Housing Authority contends the trial court erred in awarding damages in the amount
of $25,000 for past mental anguish because the evidence did not support such a finding. We agree. The
trial court properly defined mental anguish as a "relatively high degree of mental strain and distress . . . more
than mere disappointment, anger, resentment, or embarrassment, although it may include all of these. It
includes mental sensation of pain resulting from such pain- ful emotions such as grief, severe
disappointment, indignation, wounded pride, shame, despair, or public humiliation." See Saenz v. Fidelity
& Guar. Ins. Co., 925 S.W.2d 607, 614 (Tex. 1996); Wichita County v. Hart, 892 S.W.2d 912, 926
(Tex. App.--Austin 1994) (citing Kneuper, 768 S.W.2d at 460), rev'd on other grounds, 917 S.W.2d
779 (Tex. 1996). However, mental anguish damages may not be awarded without "direct evidence of the
nature, duration, severity of [plaintiff's] anguish, thus establishing a substantial disruption in his daily routine"
or other evidence of a high degree of mental pain and distress. Saenz, 925 S.W.2d at 614 (quoting
Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995)); see Hart, 892 S.W.2d at 926 (requiring
plaintiff to show mental anguish beyond mere worry, disappointment or anger) (emphasis added).

 In the present case we find that Mr. Lopez offered no evidence to support the jury's finding
that he suffered past mental anguish. In an attempt to support the finding he offers the following testimony: 



Q: Why did you resign?


A: The cut in pay -- I wouldn't be able to make my ends meet with the proposed
salary. And I felt that the position was inappropriate, you know, for the education
that I had; the Clerk of Works position. 


 . . .


Q: Was [Mr. Lopez] a good candidate [for Executive Director]?


A: I believe he was one of the top candidates.


 . . .


Q: Did she tell you what subordinates or fellow workers you were not working well
with?


A: No, she didn't.



In essence, Mr. Lopez attempts to present testimony regarding his reputation and market potential as
evidence that he suffered mental anguish without offering any testimony as to whether he even felt any
emotion. No other portion of the testimony even arguably relates to mental anguish. 

 In both Hart and Kneuper the plaintiffs put forward some showing of mental anguish in
order to recover damages. One testified that he felt "angered and embarrassed," that the termination
caused marital problems and that he suffered from lack of sleep. Hart, 892 S.W.2d at 926-27. In
Kneuper, the plaintiff stated that he felt "total panic" and "great fear," while his wife stated that he was
nervous and irritable and short with the children. Kneuper, 768 S.W.2d at 460. Here, there is no such
testimony. Because Mr. Lopez did not offer any testimony relating to his emotional state or its
consequences, we find there was neither legally nor factually sufficient evidence to support the jury's award
of damages for past mental anguish. We sustain point of error four.


Malice

 In point of error five the Housing Authority claims the trial court erred because the evidence
was legally and factually insufficient to support the finding of malice necessary to award exemplary
damages. See Kneuper, 768 S.W.2d. at 457. The jury charge asked whether the Housing Authority
acted "willfully and maliciously" in its conduct and included the following definition:


 'Willfully and Maliciously' means an intentional doing of a wrongful act without just
cause or excuse; that is, if a wrongful act is done intentionally without just cause or excuse
for believing it to be right or legal, or done with conscious disregard to the rights of others,
then such an act is willfully or maliciously done. Willfulness and intent may be inferred by
the actions and conduct of the wrongdoer.



The Housing Authority claims the jury instruction was incorrect in that it failed to ask the jury to find a
"specific intent by defendant to cause substantial injury." (2) The supreme court recently discussed the level
of proof required to support an award of punitive damages in a suit under the Texas Anti-Retaliation law. 
See Continental Coffee Prods. v. Cazarez, 937 S.W.2d 444 (Tex. 1996). The court held that actual
malice, as evidenced by ill-will, spite, or specific intent to cause injury, was required before punitive
damages could be assessed against an employer for violating the statute. Id. at 454. Although the Housing
Authority proposes that we review the evidence under a Cazarez definition of malice, this case was tried
and the verdict handed down before Cazarez was issued. Furthermore, the agency neither objected to
nor requested a different instruction regarding malice when the trial judge specifically asked for objections. 
See Tex. R. Civ. P. 272. Consequently, it failed to preserve any complaint regarding the jury charge. See
Tex. R. App. P. 33.1 (former Rule 52(a)). On appeal, parties are restricted to the theory on which the
case was tried. See City of San Antonio v. Heim, 932 S.W.2d 287, 291 (Tex. App.--Austin 1996, writ
denied) (citing Davis v. Campbell, 572 S.W.2d 660, 662 (Tex. 1978)). We will therefore summarize and
review the sufficiency of the evidence under the definition of malice submitted to the jury. See id.

 The bulk of evidence showing malice involves the Director's December 12 evaluation of
Mr. Lopez. She completed an extensive questionnaire regarding his productivity, quality of work,
punctuality, degree of supervision required, response to supervision, attempts to improve, ability to work
with others, interest in work, persistence, flexibility, ability to express self verbally and in writing, response
to crisis, and overall job performance. Ms. Farias found Mr. Lopez's performance "below expectations"
or "unsatisfactory" in most of the categories; she also commented that he needed to follow her and the
Board's directives and policies, and to learn to work with supervisors, subordinates, and fellow workers. 
We first note that Ms. Farias made this evaluation only one month after she took the position of Executive
Director. During that month, Ms. Farias and Mr. Lopez had worked together only eleven days. Mr.
Lopez testified that before the evaluation, there had been no mention of dissatisfaction with his job
performance; on occasion the Director told him that he was doing a good job. Second, on December 12,
Ms. Farias listed his failure to purchase computer software as one of two reasons for the poor evaluation,
although she had given him until the end of December to complete that job. When he reminded her of this
time table, she refused to reconsider the poor evaluation. Third, although Ms. Farias placed Mr. Lopez
on probation for six months, she did not outline a plan of what he needed to do to improve his performance. 
She did not list any of the policies he had failed to follow or name any of the coworkers who found him
uncooperative. This poor evaluation was then relied on to demote Mr. Lopez.

 Additionally, the Director demanded in a memo that Mr. Lopez train employees on
computer software within seventy-two hours. She then issued conflicting orders, telling him the training
could be done later. Nonetheless, Mr. Lopez's demotion was, in large part, based on his failure to train
the employees within the time period requested. From mid-December to the first week of January, several
events occurred which also evince that the Housing Authority acted with malice. It claimed Mr. Lopez was
demoted because of his failure to purchase computer software and to train employees. Ms. Farias sent him
several memos addressing these failures on the days when he was out of the office on approved leave due
to a death in his family and personal illness. Insensitive to Mr. Lopez's personal difficulties, the Housing
Authority faulted him for not responding immediately to the memos even though he was out of the office
during most of that time period. The agency also claimed that rent checks and cash were found in Mr.
Lopez's file cabinet rather than on deposit in the bank or safety vault. Mr. Lopez had a reasonable excuse
for not getting to the bank and, in fact, he was prevented from leaving the checks and cash in the office vault
because Ms. Farias had changed the combination without telling Mr. Lopez, despite his financial duties. 

 The trial court instructed the jury to find malice if a wrongful act was done "intentionally
without just cause or excuse of believing it to be right or legal, or done with conscious disregard to the rights
of others." Under this definition we believe the jury could have found malice. The jury's finding must be
upheld unless it is so against the great weight and preponderance of the evidence as to be manifestly unjust
or erroneous. See Pool, 715 S.W.2d at 635. In light of the whole record we conclude the evidence is
both legally and factually sufficient to support the jury's finding of malice.


Exemplary Damages

 In its sixth point of error the Housing Authority claims the trial court erred in rendering an
award of exemplary damages in the amount of $100,000 because it was excessive and there was legally
and factually insufficient evidence to support the award. An appellate court reviews an exemplary damages
award to ensure that it is reasonable in its amount and rational in light of its purpose to punish malicious
conduct and deter repetition. See Heim, 932 S.W.2d at 294. We may reverse an exemplary damages
award or suggest a remittitur only if we determine that the evidence supporting the award is so factually
insufficient or the verdict is against the great weight and preponderance of the evidence as to be manifestly
unjust. See id. (citing Moriel, 879 S.W.2d at 30). In reviewing the award, we consider the following
factors: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability
of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which
such conduct offends a public sense of justice and propriety. See Heim, 932 S.W.2d at 294 (citing
Alamo Nat'l Bank v. Kraus, 616 S.W.2d 908, 910 (Tex. 1981)). To determine whether the award is
excessive, we must detail the relevant evidence and explain why, in light of the Kraus factors, the evidence
either supports or does not support the exemplary damages awarded. See Heim, 932 S.W.2d at 294
(citing Ellis County State Bank v. Keever, 888 S.W.2d 790, 798 (Tex. 1994)).

 We assess the nature of the wrong in light of the purposes underlying the Whistleblower
Act: (1) to protect public employees from retaliation by their employers for reporting violations of law in
good faith, and (2) to secure in consequence lawful conduct on the part of those who direct and conduct
the affairs of public bodies. See Travis County v. Colunga, 753 S.W.2d 716, 718 (Tex. App.--Austin
1988, writ denied). Although Mr. Lopez was not reporting a violation of a health or safety code, he was
in good faith reporting a violation by a public agency of its governing regulations. The short period between
his report and his demotion suggests a retaliatory animus. The Director's conduct, her friendship with the
Chairperson, and the surrounding evidence indicate Ms. Farias harassed Mr. Lopez in a personal manner
by making it difficult, almost impossible, for him to do his job well. The Housing Authority cannot avoid
responsibility for the caustic behavior of its Director. 

 In this employment context, the relative situations of the Housing Authority and Mr. Lopez
were unequal. While Mr. Lopez could and did point out possible violations, he could not force Ms. Farias
or the Board to follow the regulations. Only the Director and the Board were in the position to ensure that
regulations were followed or to retaliate against employees who prodded them to comply with regulations
and then reported seeming violations. Although Mr. Lopez was not obligated to report violations or to
persist in informing HUD and the Housing Authority that regulations were being broken, he did so,
regardless of the obvious consequences. The Housing Authority apparently assumed that by demoting Mr.
Lopez his persistence would disappear, his reports would stop, or perhaps, he would just quit. Such
actions should not be condoned. The Housing Authority is a public agency whose business is to administer
affordable housing to families in Crystal City. The Whistleblower Act was designed to protect employees
who urge public agencies to conduct their affairs honestly and correct their mistakes. The Act provides
for exemplary damages when such an employee is harassed or treated in a punitive manner. We cannot
say that the jury acted unreasonably by awarding exemplary damages in the amount of $100,000. Because
the evidence is both legally and factually sufficient to support the award, we overrule point six.


Prejudgment Interest

 In point of error seven, the Housing Authority claims the trial court erred in awarding
prejudgment interest on exemplary damages because Mr. Lopez is not entitled to such interest under Texas
law. See Tex. Civ. Prac. & Rem. Code Ann. § 41.007 (West Supp. 1997). Mr. Lopez concedes he is
not entitled to prejudgment interest on exemplary damages. We sustain point of error seven.

CONCLUSION

 Finding no evidence to support the jury's award for future lost earning capacity or mental
anguish, we reverse the trial court and render judgment that Mr. Lopez take nothing on those claims. We
modify the trial court's judgment to reduce the award for past lost earnings from $28,549.57 to $8801.89
because we find no basis for $19,747.68 of the award for lost benefits. We reverse the trial court's award
of prejudgment interest and remand that portion of the cause for recalculation consistent with this opinion. 
In all other respects, the judgment of the trial court is affirmed.



 __________________________________________

 Bea Ann Smith, Justice

Before Justices Powers, Aboussie and B. A. Smith

Reversed and Rendered in Part; Reversed and Remanded in Part; Modified and, as Modified, 

 Affirmed in Part

Filed: October 23, 1997

Publish
1. Because the 1995 amendments govern conduct occurring after June 15, 1995, the 1993 version
of the Whistleblower Act applies in this case. See Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993
Tex. Gen. Laws 583, 609-11. (Tex. Gov't Code Ann §554.001-.009 (West 1994), since amended)
("Former Act").
2. The Housing Authority also claims the instruction failed to require a finding that "the act or
omission viewed objectively involved an extreme degree of risk of which [d]efendant had actual subjective
awareness of the risk involved." This definition has been used only in personal injury cases in which
exemplary damages are awarded for gross negligence. See, e.g., Transportation Ins. Co. v. Moriel, 879
S.W.2d 10, 23 (Tex. 1994). We find that definition inapposite in the present case.



endship with the
Chairperson, and the surrounding evidence indicate Ms. Farias harassed Mr. Lopez in a personal manner
by making it difficult, almost impossible, for him to do his job well. The Housing Authority cannot avoid
responsibility for the caustic behavior of its Director. 

 In this employment context, the relative situations of the Housing Authority and Mr. Lopez
were unequal. While Mr. Lopez could and did point out possible violations, he could not force Ms. Farias
or the Board to follow the regulations. Only the Director and the Board were in the position to ensure that
regulations were followed or to retaliate against employees who prodded them to comply with regulations
and then reported seeming violations. Although Mr. Lopez was not obligated to report violations or to
persist in informing HUD and the Housing Authority that regulations were being broken, he did so,
regardless of the obvious consequences. The Housing Authority apparently assumed that by demoting Mr.
Lopez his persistence would disappear, his reports would stop, or perhaps, he would just quit. Such
actions should not be condoned. The Housing Authority is a public agency whose business is to administer
affordable housing to families in Crystal City. The Whistleblower Act was designed to protect employees
who urge public agencies to conduct their affairs honestly and correct their mistakes. The Act provides
for exemplary damages when such an employee is harassed or treated in a punitive manner. We cannot
say that the jury acted unreasonably by awarding exemplary damages in the amount of $100,000. Because
the evidence is both legally and factually sufficient to support the award, we overrule point six.


Prejudgment Interest

 In point of error seven, the Housing Authority claims the trial court erred in awarding
prejudgment interest on exemplary damages because Mr. Lopez is not entitled to such interest under Texas
law. See Tex. Civ. Prac. & Rem. Code Ann. § 41.007 (West Supp. 1997). Mr. Lopez concedes he is
not entitled to prejudgment interest on exemplary damages. We sustain point of error seven.