Wichita County 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-358-CV






WICHITA COUNTY, TEXAS,



 APPELLANT


vs.





ALLEN HART AND ERNIE WILLIAMS,



 APPELLEES


 



FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT



NO. 468,081, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 





 Allen Hart and Ernie Williams ("appellees") filed suit against Wichita County ("the
County") for wrongful termination pursuant to Tex. Gov't Code Ann. §§ 554.001-.009 (West
1994) (hereinafter "the Whistleblower Act"). (1) The County filed a motion to transfer venue, which
the trial court denied. After a jury trial in which the appellees prevailed, the County appeals. We
will affirm.



BACKGROUND


 The appellees were employed as law enforcement officers in the Wichita County
Sheriff's Department. In February 1989, appellee Hart became aware of some questionable
activities occurring in the department. Hart consulted with appellee Williams about the legality
of a proposed gun sale and a deed of property that a local law firm had transferred to the sheriff,
and the two subsequently began investigating these transactions.

 Hart eventually sought the advice of Mike Cross, an investigator with the District
Attorney's Office, about the legality of these activities. Cross launched an investigation in order
to determine whether the sheriff's department was violating any laws. During this same period,
Williams reported his belief that criminal activities were occurring in the department to FBI
Special Agent Lee Hale.

 On May 1, 1989, Cross confronted Sheriff Callahan about the transfer of the deed. 
During that meeting it was revealed that the purpose of the deed transaction was to provide
collateral so that the law firm could make bail bonds for its criminal defense practice. Sheriff
Callahan demanded to know the identities of the complainants. Hart was terminated later that day;
Williams was terminated two days later on May 3, 1989.

 The appellees sued the County under the Whistleblower Act, contending that their
positions as deputy sheriffs were terminated because they reported a superior's violation of the
law. Appellees filed suit in Travis County pursuant to the special venue provision contained in
the Whistleblower Act. Tex. Gov't Code Ann. § 554.007 (West 1994). The County filed a
motion to transfer venue to Wichita County, contending that the mandatory venue provision of
section 15.105 of the Texas Civil Practice and Remedies Code entitled the County to defend the
suit in Wichita County. The trial court denied the County's motion to transfer venue.

 The appellees prevailed at trial, obtaining a substantial jury verdict for their
termination. The County appeals, raising ten points of error, (2) including a challenge to the trial
court's denial of its motion to transfer venue. Because the County's venue challenge is a threshold
issue, we address it first.


DISCUSSION


Venue


 In its first point of error, the County contends that the trial court erred in denying
its motion to transfer venue. If the trial court did err, we must reverse the judgment and remand
the cause for a new trial. See Tex. Civ. Prac. & Rem. Code Ann. § 15.064(b) (West 1986).

 Section 15.015 of the Civil Practice and Remedies Code mandates, "An action
against a county shall be brought in that county." Tex. Civ. Prac. & Rem. Code Ann. § 15.015
(West 1986) (hereinafter "the county provision"). The special venue provision in the
Whistleblower Act, section 554.007 of the Government Code, provides, "A public employee may
sue under this chapter in a district court of the county in which the employee resides or in a
district court of Travis County." Tex. Gov't Code Ann. § 554.007 (West 1994).

 As a general rule, the plaintiff chooses venue. Wilson v. Texas Parks & Wildlife
Dep't, 37 Tex. Sup. Ct. J. 1147, 1148-49 (June 22, 1994). The defendant is entitled to have a
motion to transfer venue granted in only two instances: (1) the plaintiff's choice of venue is not
proper, meaning that no venue provision permits the case to be tried in the court where the
plaintiff filed suit; or (2) a mandatory venue provision requires (3) that the case be brought in another
court. (4) See Tex. R. Civ. P. 86(3). A defendant is not entitled to have venue transferred from one
permissive venue to another permissive venue, and indeed, it is reversible error for a trial court
to grant such a transfer. Wilson, 37 Tex. Sup. Ct. J. at 1149. In the instant cause, appellees filed
suit in Travis County, clearly a proper venue under the whistleblower special venue provision. 
The County contends, however, that the district court erred by not transferring the cause to
Wichita County pursuant to the mandatory county provision.

 The county provision has long been a part of the law of our state and has long been
regarded as a mandatory venue provision:



The first legislature of the state made it the law in Texas that all suits against a
county shall be instituted in some court of competent jurisdiction within such
county. . . . To this mandatory provision there seems to be no exception. It was
originally enacted May 13, 1846,--two days before the passage of the general venue
statute, with its 11 exceptions to the rule there promulgated . . . .



Montague County v. Meadows, 31 S.W. 694, 694 (Tex. Civ. App.--Fort Worth 1895, writ ref'd)
(citations omitted). Since its adoption, courts have consistently held that the county provision is
a mandatory venue provision. One court explained that "counties are so closely identified with
the sovereign power of the state that they may be sued only upon the terms and conditions
prescribed by the statute." Dial v. Crosby County, 96 S.W.2d 534, 536 (Tex. Civ. App.--Amarillo
1936, no writ); see also City of Tahoka v. Jackson, 276 S.W. 662, 663 (Tex. Comm'n App.
1925, opinion adopted); Randall County v. Todd, 542 S.W.2d 236, 237 (Tex. Civ. App.--Amarillo
1976, no writ); Hodges v. Coke County, 197 S.W.2d 886 (Tex. Civ. App.--Amarillo 1946, no
writ).

 The legislature reaffirmed the holdings of these courts with its revision of the venue
statute in 1983, placing the county provision in a subchapter of the Civil Practice and Remedies
Code entitled "Mandatory Venue." (5) Thus, the district court was required to grant the County's
motion to transfer venue to Wichita County unless the whistleblower provision is either
jurisdictional or mandatory.



Is the Whistleblower Venue Provision Jurisdictional?

 If a venue provision is jurisdictional, and suit is not filed in a proper court, the
court in which the suit is improperly filed lacks the power even to transfer the cause to a court
where venue is proper; the court must simply dismiss the cause. Gambill v. Town of Ponder, 494
S.W.2d 808, 810 (Tex. 1973); Federal Underwriters Exch. v. Pugh, 174 S.W.2d 598, 600 (Tex.
1943). Furthermore, the parties may not waive a jurisdictional venue provision. The language
of some venue provisions unambiguously indicates that the legislature intended the provisions to
be jurisdictional in nature. (6) If it is unclear from the provision's wording whether the legislature
intended the provision to be jurisdictional, the question must be resolved by statutory construction. 
Brown v. Owens, 674 S.W.2d 748, 750 (Tex. 1984).

 In Brown v. Owens, the Texas Supreme Court held that the venue provision in the
Texas Tort Claims Act was not jurisdictional. In doing so, the supreme court stated that a court
must consider the entire Act, including the caption of the venue provision, the wording of the
venue provision, and the Act as a whole. Id.

 The whistleblower special venue provision states that "[a] public employee may sue
under this chapter in a district court of the county in which the employee resides or in a district
court of Travis County." Tex. Gov't Code Ann. § 554.007 (West 1994). The section-specific
portion of the legislative bill analysis does not state the purpose of the venue provision. However,
the caption of the section in which the venue provision appeared in the original Act read: 
"REMEDY; BURDEN OF PROOF; VENUE." (7)

 Appellees, however, contend that a Texas Supreme Court decision and a decision
from this Court indicate that the whistleblower provision is jurisdictional. Appellees rely upon
Mingus v. Wadley, 285 S.W. 1084 (Tex. 1926) and Carter v. Dean, 660 S.W.2d 866 (Tex.
App.--Austin 1983, no writ). In Mingus v. Wadley, the supreme court held that the two venue
provisions in the Workmen's Compensation Act were jurisdictional. Mingus, 285 S.W. at 1087-88 (construing Workmen's Compensation Law (8), 35th Leg., R.S., ch. 103, §§ 5, 5a, 1917 Tex.
Gen. Laws 269, 283-84, since repealed). The supreme court recognized that a suit under the
Workers' Compensation Act "of necessity involves the fact of the accident, the issue of the injury,
and the wages of the claimant; all of which may be established with less expense, trouble, and
delay in the county where the injury occurred than in any other county." Id. at 1087. The
supreme court also noted that construing the provision as jurisdictional was consistent with the
general rule "that where a statute creates a right and provides a remedy for its enforcement, the
remedy is exclusive, and where it confers jurisdiction upon a particular court, that jurisdiction is
exclusive." Id. at 1088. In Carter v. Dean, this Court followed Mingus, holding that section
11.67 of the Texas Alcoholic Beverage Code was jurisdictional because it "creates a right of
judicial review and specifies the court wherein such review shall be conducted by a suit against
the Commission." Carter, 660 S.W.2d at 868.

 In determining whether the whistleblower provision is jurisdictional, it is helpful
to compare the Whistleblower Act with other statutory causes of action that contain special venue
provisions. The Workers' Compensation Act considered in Mingus replaced the common law
cause of action of negligence for injuries in the course of employment with a set scheme of
recovery available without regard to fault. Middleton v. Texas Power & Light Co., 185 S.W.
556, 560 (Tex. 1916) ("[A] fixed compensation is payable to [the employee] upon the mere
happening of any injury in the course of the employment, or to his beneficiaries in the event of
his death from the injury, without reference to any negligence on the part of the employer or his
servants, and without regard to defenses available to the employer at common law."). Mingus
held that the venue provision in the Workers' Compensation Act was jurisdictional. Venue
provisions in statutes providing for judicial review of the orders and decisions of administrative
agencies have also been held to be jurisdictional. See, e.g., Carter, 660 S.W.2d at 869; State v.
Novall, Inc., 770 S.W.2d 589, 590 (Tex. App.--Austin 1989, writ denied) (construing Natural
Resources Code § 85.241, which provides a cause of action for persons "affected by the
conservation laws of this state or orders of the [Railroad Commission] relating to oil or gas" to
be jurisdictional).

 Venue provisions in other statutory causes of action have been held not to be
jurisdictional. The Tort Claims Act, at issue in Brown, enabled individuals to bring recognized
common law causes of action against units of government by abrogating sovereign immunity. 
Brown, 674 S.W.2d at 750 ("The Texas Tort Claims Act was enacted to abolish governmental
immunity in certain instances and to grant permission to all claimants to bring suit against the
State of Texas for all claims arising under the Act."). The Deceptive Trade Practices and
Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1994)
(hereinafter "DTPA"), created a new statutory cause of action, though similar to common law
claims for fraud and breach of warranty. Smith v. Baldwin, 611 S.W.2d 611, 616 (Tex. 1980). 
Like the Tort Claims Act, courts have construed the DTPA venue provision as permissive, and
thus not jurisdictional. See Hendrick v. McMorrow, 852 S.W.2d 22, 24 (Tex. App.--Beaumont
1993, no writ); Portland Sav. & Loan Ass'n v. Bevill, Bresler & Schulman Gov't Sec., Inc., 619
S.W.2d 241, 246 (Tex. Civ. App.--Corpus Christi 1981, no writ).

 We conclude that the Whistleblower Act is more akin to the DTPA and the Tort
Claims Act than the Workers' Compensation Act or statutes permitting suits for judicial review
of agency decisions. The Whistleblower Act abrogates sovereign immunity as does the Tort
Claims Act, and in addition supersedes the employment-at-will doctrine. This abrogation enables
government employees, when terminated for reporting illegal activities of their employers, to file
suit against their employers. Additionally, like the DTPA, the Whistleblower Act creates a new
cause of action. Unlike the Workers' Compensation Act, the Whistleblower Act neither replaces
a pre-existing common law cause of action, nor provides for a suit for judicial review of an
agency action.

 Accordingly, we hold that the whistleblower provision is not jurisdictional. Our
conclusion also follows from applying the analysis of Brown v. Owens. As in Brown, the caption
labels the whistleblower provision as a venue provision; the caption does not mention jurisdiction. 
Furthermore, the wording of the venue provision does not indicate that the legislature intended
the provision to be jurisdictional in nature.


Is the Whistleblower Provision Mandatory or Permissive? 

 Having determined that the whistleblower provision is not jurisdictional, we now
turn to the question of whether the whistleblower provision is a mandatory or permissive venue
provision. The fact that the whistleblower provision is a special venue provision does not indicate
that it is mandatory. Sections of the venue statute in the Civil Practice and Remedies Code
incorporating special venue provisions appear under both the headings "Mandatory Venue" and
"Permissive Venue." (9)

 The County contends that we should construe the whistleblower special venue
provision as permissive because it uses the term "may." We recognize that "courts have
repeatedly distinguished between the mandatory language of `shall' or `must' in a venue provision
and the permissive language of `may' in such provision." Portland Sav. & Loan Ass'n, 619
S.W.2d at 246.

 On the other hand, this Court has stated that "[i]n determining whether a particular
usage is mandatory or permissive, the entire Act should be considered, including the object and
nature of the Act, and also consequences of either interpretation." Ramirez v. State, 550 S.W.2d
121, 124 (Tex. Civ. App.--Austin 1977, no writ) (holding that a statute which provided that suits
for repayment of student loans "shall" be instituted in specific courts was a mandatory venue
provision). Accordingly, we will examine the purpose of the Whistleblower Act.

 The Whistleblower Act provides that its purpose is "the protection of public
employees who report a violation of law." Act of June 19, 1983, 68th Leg., R.S., ch. 832, 1983
Tex. Gen. Laws 4751, 4751 (Tex. Rev. Civ. Stat. Ann. art. 6252-16a, since repealed). This
Court has further stated that "the statute as a whole evidences two legislative purposes: (1) to
protect public employees from retaliation by their employer when, in good faith, employees report
a violation of law, and (2) in consequence, to secure lawful conduct on the part of those who
direct and conduct the affairs of public bodies." Texas Dep't of Human Servs. v. Green, 855
S.W.2d 136, 142 (Tex. App.--Austin 1993, writ denied) (citing Travis County v. Colunga, 753
S.W.2d 716, 718-19 (Tex. App.--Austin 1988, writ denied)); see also Castaneda v. Texas Dep't
of Agric., 831 S.W.2d 501, 503 (Tex. App.--Corpus Christi 1992, writ denied) (noting that
because the purpose of the Whistleblower Act is to protect those who inform authorities of their
employers' wrongdoing, the Act must be construed "liberally, and in accordance with its remedial
purpose").

 It is significant that during the same legislative session that the Whistleblower Act
was passed, the legislature was involved in an extensive amendment of the general venue statute. 
The former venue statute's "dominant purpose" was "to give a person who has been sued the right
to defend such suit in the county of his domicile." City of Mineral Wells v. McDonald, 170
S.W.2d 466, 468 (Tex. 1943). The general venue statute was amended, however, to include also
"the county in which all or part of the cause of action accrued." Tex. Civ. Prac. & Rem. Code
Ann. § 15.001 (West 1986). In doing so, the legislature resisted pressure to adopt as a venue
option the county of the plaintiff's residence. See Dan R. Price, New Texas Venue Statute:
Legislative History, 15 St. Mary's L.J. 855, 869-71 (1984); Senator Kent Caperton, Alan
Schoenbaum & Art Anderson, Anatomy of the Venue Bill, 47 Tex. B.J. 244 (1984).

 With this legislative history in mind, we consider it significant that in the special
venue provision of the Whistleblower Act, the legislature chose to adopt the county of the
plaintiff's (employee's) residence as a proper venue. We also regard as significant the inclusion
of Travis County as a venue choice, which in effect functions as a safe-harbor venue provision. 
Were we to construe this special venue provision as only permissive, it would create the anomaly
that county employees would be the only government employees deprived of these venue choices;
mandatory venue would only be proper in the defendant-county. (10) Given that one of the purposes
of the Whistleblower Act is to protect government employees from retaliation after reporting their
employers' violations of the law, we conclude that the legislature did not intend to penalize county
employees by depriving them of the special venue provision of the Whistleblower Act. 
Accordingly, we hold that the special venue provision of the Whistleblower Act is mandatory.

 We thus have a conflict between two mandatory venue provisions. The general
scheme of the venue statute is that plaintiffs may choose between two proper venues. See Wilson,
37 Tex. Sup. Ct. J. at 1148-49. We conclude the trial court properly overruled the County's
motion to transfer since this cause was properly filed in Travis County, one of the mandatory
venue choices under the Whistleblower Act. The County's first point of error is overruled.

Court's Charge


 In its second, third, sixth, and seventh points of error, the County contends that the
trial court erred in denying proper instructions concerning the definition of certain terms from the
Whistleblower Act in the court's charge, and also challenges the sufficiency of the evidence to
support the jury's findings on certain issues. The Act provides:



A state agency or local government may not suspend or terminate the employment
of or discriminate against a public employee who in good faith reports a violation
of law to an appropriate law enforcement authority.



Tex. Gov't Code Ann. § 554.002 (West 1994). The County submitted instructions at trial which
the trial court refused. The County complains of this refusal, arguing both that the trial court
abused its discretion in submitting certain instructions to the jury and that there was insufficient
evidence to support the jury's verdict. 



A. Good-Faith Instruction

 In its second point of error, the County argues that the trial court improperly denied
a proper instruction on good faith, and thus permitted the jury to disregard the unreasonable
conduct and venal motivation of the appellees in reporting the alleged illegal conduct under the
Whistleblower Act. At trial, the County requested an instruction defining "good faith," which
the trial court rejected. (11)

 Under the Texas Rules of Civil Procedure, a trial court is required to submit
explanatory instructions and definitions that will assist the jury in rendering a just and fair verdict. 
Tex. R. Civ. P. 277; Brewer v. Dowling, 862 S.W.2d 156, 158 (Tex. App.--Fort Worth 1993,
writ denied). A trial court's refusal to submit requested instructions will not be reversed on
appeal unless the court abused its discretion. Magro v. Ragsdale Bros., Inc., 721 S.W.2d 832,
836 (Tex. 1986). 

 The County urges us to adopt a definition of good faith that is similar to that used
in defamation law, and which would provide protection only in instances where the employee acts
without malice or spiteful motivation. See Hurlbut v. Gulf Atl. Life Ins. Co., 749 S.W.2d 762,
768 (Tex. 1987) (discussing how conditional privileges may be lost if malice motivates the
defendant's actions). The County bolsters its argument by relying on a definition of good faith
that was suggested in Winters v. Houston Chronicle Publishing Co., 795 S.W.2d 723, 732 (Tex.
1990) (Doggett, J., concurring). This reliance is misplaced, however, because Winters presented
the issue of whether a new cause of action should be created under the common law for private
employees who are terminated in retaliation for reporting violations by their superiors; it did not
involve the statutory provisions of the Whistleblower Act. 

 Appellees respond that claims brought under the Whistleblower Act have not
involved such expansive definitions of "good faith," and that the trial court's good-faith instruction
is consistent with prior appellate interpretations of the term. We agree. This Court previously
has found that the focus of the good-faith requirement is the employee's belief that the reported
conduct violates the law, not the employee's motive for reporting the conduct. Green, 855
S.W.2d at 151. Therefore, the necessary inquiry involves the objective reasonableness of the
employee's belief, and not the employee's subjective motivation in reporting the conduct. Id. In
examining the County's proposed jury instruction, we conclude that it emphasized appellees'
subjective motivation in a way unwarranted under present case law. The trial court patterned its
instruction after instructions used in previous whistleblower cases, and thus did not abuse its
discretion in denying the County's instruction. See City of Ingleside v. Kneuper, 768 S.W.2d 451,
453 (Tex. App.--Austin 1989, writ denied). The County's second point of error is overruled.

 The County next argues that the trial court erred in refusing to grant a new trial
because there was insufficient evidence that the appellees' conduct in making the report was
objectively reasonable. When reviewing a jury verdict to determine the factual sufficiency of the
evidence, we must consider and weigh all the evidence and should set aside the judgment only if
it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex.
1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986). See generally William
Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence", 69 Tex.
L. Rev. 515 (1991). 

 In the instant cause, both appellees testified that they became aware of certain
questionable activities occurring in the sheriff's office. Hart testified that a sergeant in the office
informed him that he had lost all respect for the sheriff, but then refused to discuss the matter any
further. Hart testified he spoke with the office deputies who explained that the sheriff's
department owned some property which had been transferred to Sheriff Callahan from a local law
firm. The law firm allegedly was having financial difficulties at that time, and Hart became
concerned because the property was transferred to Callahan personally in what appeared to be an
absolute conveyance, rather than as mere security for bail bonds. At approximately the same
time, Hart discovered that a deputy in the sheriff's office was about to sell some guns from the
evidence room illegally. When he approached the deputy to question him, the deputy informed
him that the sheriff had authorized the sale. Hart attempted to discuss the illegal sale with Sheriff
Callahan, but the chief deputy informed him that the sheriff was handling the problem. The
sheriff relieved Hart of his supervisory duties the following day. Hart then discussed with
Williams the gun sale and the deed of property to the sheriff.

 Hart stated at trial that he believed that the sheriff's office had taken the property
in order to sell it to pay off a judgment against the law firm in question, and that this action
harmed a local bank, which had also obtained a judgment against the law firm. He reported his
suspicions to Mike Cross, the chief investigator in the Wichita County District Attorney's office,
after Hart and Williams concluded that it would be the best course of action. Hart approached
Cross about the deed because he believed that the investigator would be objective in researching
whether the suspicions concerning the deed were justified. Williams testified that he consulted
with FBI agent Lee Hale because there were bankruptcy proceedings and tax liens against some
members of the law firm that had conveyed the property, and he was worried that they were
"hiding the property" by transferring it to the sheriff. 

 Reviewing the testimony presented at trial, we conclude that the evidence was
sufficient to support the jury's finding that the appellees acted reasonably. Nevertheless, the
County urges us to hold appellees to a higher standard of conduct because they are law
enforcement officers. We decline to adopt a higher standard for law enforcement officers since
the Whistleblower Act itself makes no such distinction. Appellees investigated the suspicious
activities and attempted to obtain outside advice during their investigation, and we therefore refuse
to hold as a matter of law that their conduct was objectively unreasonable. We overrule the
County's third point of error.



B. Violation of Law 

 In its sixth point of error, the County contends that the trial court erred in refusing
a jury instruction that would have required that an actual violation of law occur in order for
appellees to receive the protection of the Whistleblower Act. The trial court's instruction asked
the jury to determine whether the plaintiffs were terminated for reporting conduct that the
plaintiffs "believed to be a violation of law." The County submitted an instruction that required
the jury to find an actual violation of law, which the trial court denied. The County argues that
the statute's express language compels this instruction, and that a court must give a statute a literal
interpretation when its wording is unambiguous. Mathews Constr. Co., Inc. v. Jasper Hous.
Constr. Co., 528 S.W.2d 323, 326 (Tex. Civ. App.--Beaumont 1975, writ ref'd n.r.e.).

 Appellees respond that the County ignores previous cases that have provided a
strong rationale for not requiring an actual violation before a whistleblower can receive the
protection of the statute. In Lastor v. City of Hearne, 810 S.W.2d 742 (Tex. App.--Waco 1991,
writ denied), the Waco Court of Appeals argued that the good-faith provision of the statute is
meaningless if it covers only situations where an actual violation of the law occurs. The court
reasoned that the good-faith requirement can be given effect only if it protects employees who
report what they believe to be a violation of law, even if it is subsequently determined that there
was no actual violation. Id. at 744. (12) We have previously adopted the Lastor conclusion that an
actual violation of law is not required. Green, 855 S.W.2d at 150. The County offers no
persuasive reason to reject that conclusion now, and we therefore overrule the County's point of
error number six.



C. Appropriate Legal Authority

 The County's seventh point of error only concerns Williams. The County attacks
the factual and legal sufficiency of the evidence to support the jury's finding that Williams
reported a violation to an appropriate law enforcement authority. In deciding a no-evidence point,
we must consider only the evidence and inferences tending to support the finding of the trier of
fact and disregard all evidence and inferences to the contrary. Alm v. Aluminum Co. of Am., 717
S.W.2d 588, 593 (Tex. 1986), cert. denied, 498 U.S. 847 (1990). When reviewing a jury verdict
to determine the factual sufficiency of the evidence, we must consider and weigh all the evidence
and should set aside the judgment only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Cain, 709 S.W.2d at 176. 

 The evidence at trial indicated that Williams was present in the room when Hart
and Cross were discussing the allegations. The County argues that Cross did not recall whether
Williams said anything during the meeting, and thus contends that Williams cannot obtain the
protection of the Whistleblower Act for any report that Hart may have made on Williams' behalf. 
It is clear from all of the testimony at trial that Hart and Williams acted together in initiating the
investigation. Williams participated in virtually every aspect of the investigation and was
terminated by Sheriff Callahan for his involvement. Williams was present in the room during
discussions about the investigation. Although Williams may not have been a main participant in
these discussions, we do believe that he was sufficiently involved to receive the protection of the
Whistleblower Act.

 Even if we were to conclude that Williams failed to make a report to Cross, the
evidence was undisputed that Williams reported the possibility of criminal activity to FBI Special
Agent Lee Hale. The County recognizes that Williams may have reported a violation of law to
Hale, but asserts that Hale was not an "appropriate law enforcement authority" because, as a
federal agent, Hale had no power or authority to investigate or enforce compliance with state law. 
An appropriate law enforcement authority includes "any public authority having the power and
duty of inquiring into the lawfulness of the questioned conduct and causing its cessation if the
conduct appears to be in violation of the law." Colunga, 753 S.W.2d at 719-20. 

 We agree with the County that Agent Hale lacked authority to investigate state law
violations. The testimony at trial, however, indicates that Williams consulted with Hale about the
possibility that federal laws had been violated. Williams testified that he approached Hale because
there were tax liens and bankruptcy proceedings against some members of the law firm that had
transferred the deed to Sheriff Callahan and he believed that federal violations might have
occurred. Agent Hale then conveyed the information that Williams had given him to Cross, but
continued to monitor the case because of the possibility that a federal issue might develop. 

 We hold that the evidence was legally and factually sufficient to support the jury's
finding that Williams reported the violations to an appropriate authority. Given Hale's testimony
that he, a trained FBI agent, believed that a federal issue might develop in the case, it was not
against the great weight of the evidence for the jury to find that Hale was an appropriate law
enforcement authority. The County's seventh point of error is overruled.



Damages


A. Future Wages

 In its fourth point of error, the County alleges that the trial court erred in denying
a proper instruction on damages by including an erroneous category in one of the jury issues: lost
future wages. The County submitted an instruction to the trial court which requested that future
earning capacity be used instead, and the trial court denied the motion.

 The Whistleblower Act does not specify the correct measure of damages for losses
that the plaintiff may incur in the future. Tex. Gov't Code Ann. § 554.003 (West 1994). (13) The
County relies on personal injury cases in urging us to require that lost earning capacity be used
in assessing damages in whistleblower cases. It is well-established law in personal injury cases
that the measure of damages is the diminished earning capacity of the plaintiff, not his actual lost
earnings. Missouri-Kan.-Tex. R.R. v. Alvarez, 703 S.W.2d 367, 372 (Tex. App.--Austin 1986,
writ ref'd n.r.e.). In Texas Department of Human Services. v. Hinds, 860 S.W.2d 893, 900-01
(Tex. App.--El Paso 1993, writ granted), the court of appeals suggested that "future earning
capacity" is the appropriate measure of damages in cases under the Whistleblower Act. The
County argues that its proposed instruction reflects the one used in Kneuper, 768 S.W.2d at 454,
and that we therefore should hold that "future earning capacity" is the correct method for
calculating damages in whistleblower cases. 

 No case, however, has addressed whether "future earning capacity" is the only
appropriate method for determining damages. The use of lost wages as a measure of damages has
been expressly approved in at least one other category of cases: those brought under the Workers'
Compensation statute for wrongful termination for filing a workers' compensation claim. Act of
May 7, 1971, 62d Leg., R.S., ch. 115, 1971 Tex. Gen. Laws 884, 884-85 (Tex. Rev. Civ. Stat.
Ann. art. 8307c, since repealed). In Carnation Co. v. Borner, 610 S.W.2d 450, 454 (Tex. 1980),
the supreme court concluded that an employee may recover for loss of wages in the future if those
wages are ascertainable with reasonable certainty. The court found that the statutory language of
"reasonable damages" provided no restriction on the type of damages that could be recovered. 
Id. Appellees argue that "reasonable damages" is comparable to the damage provisions of the
Whistleblower Act in that neither limits the "actual" or "reasonable" damages available to the
plaintiff to any specific elements of damages. Tex. Gov't Code Ann. § 554.003 (West 1994). 

 Citing the language of the statute, the County responds that section 554.003(b)
itemizes the elements of compensation that an employee who has been wrongfully terminated can
recover, and since "front pay" is not included in this itemized list, plaintiffs cannot recover for
loss of future wages. The language of the Act provides that the elements under section 554.003(b)
describe compensation that the plaintiff is entitled to in addition to the relief provided for in
section 554.003(a). Tex. Gov't Code Ann. § 554.003 (West 1994); see also Kneuper, 768
S.W.2d at 457-58. We do not agree that the statute precludes recovery for lost future wages. In
Green, we approved the submission of an instruction that was patterned after the one used in cases
brought under the Workers' Compensation Act. Green, 855 S.W.2d at 150. Because the jury
issue submitted in the instant cause followed the practice under the Workers' Compensation Act,
we find no error in a jury instruction that uses "lost wages" instead of "lost future earning
capacity" as the measure of future damages. (14) 

 The County also challenges the legal and factual sufficiency of the evidence to
support appellees' recovery of future lost wages. In deciding a no-evidence point, we must
consider only the evidence and inferences tending to support the finding of the trier of fact and
disregard all evidence and inferences to the contrary. Alm, 717 S.W.2d at 593. If any probative
evidence supports the finding, we must uphold the finding and overrule the point of error. In re
King's Estate, 244 S.W.2d at 661; Green, 855 S.W.2d at 146. If we conclude that the finding
is supported by legally sufficient evidence, we must then determine whether the evidence is
factually sufficient. In doing so, we must consider and weigh all the evidence and should uphold
the jury finding unless it is so against the great weight of the evidence as to be manifestly unjust
or erroneous. Pool, 715 S.W.2d at 635. We are not free to substitute our judgment for that of
the jury merely because we may believe that a different result may be more reasonable. Id. at
634. 

 The County's principal contention is that appellees are not entitled to recover future
wages because each failed to offer evidence of a diminution in his ability to work after his
termination. At trial, both appellees testified that they had not applied for law enforcement
positions in Wichita and surrounding counties because they believed they would not be hired. 
Hart stated that his belief was based on "the coverage of my firing, being disgruntled, and now
they know I filed a lawsuit and I just don't . . . think I'd be hired." Hart further explained that
his experience in law enforcement led him to believe that law enforcement agencies comprise a
brotherhood "that stick together," and that during his term as operations chief of the sheriff's
department, the department had never hired an applicant who had been terminated from another
law enforcement agency.

 Williams testified that his failure to apply for other jobs in law enforcement was
predicated on his belief that "when you're fired from the sheriff's department, and you turn
around and sue him, there's not much chance you're going to get a job in law enforcement." 
Based on his experience in law enforcement, Williams contended that the termination was a black
mark on his record that would make it very difficult for him to obtain employment with another
law enforcement agency. In addition, Roger Crampton, an attorney in Wichita County, testified
that it is difficult to do business in Wichita County when the "powers that be in the County" are
upset with you. 

 The County's expert witness, Terri McCaslin, testified that there were numerous
law enforcement jobs available in the Wichita County area, and indicated that, in her opinion,
appellees could have obtained other law enforcement positions. The County argues that appellees
offered no experts to corroborate their opinions, and therefore the evidence was insufficient to
support the award. The opinions of experts are not conclusive on the jury, and a jury is free to
accept lay testimony over that of experts. McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex.
1986). In the instant cause, the jury apparently accepted the appellees' testimony and rejected
McCaslin's opinion. We hold that the testimony of Hart, Williams, and Crampton constituted
factually and legally sufficient evidence on the issue of future wage loss, and overrule the
County's fourth point of error. 



B. Mental Anguish

 In its fifth point of error, the County complains that there was no evidence or
insufficient evidence to support the jury's answers to questions 3(c) and 3(d), which concerned
damages for past and future mental anguish. A plaintiff must show more than mere worry,
disappointment, anger, resentment, or embarrassment in order to prove mental anguish. Worsham
Steel Co. v. Arias, 831 S.W.2d 81, 85 (Tex. App.--El Paso 1992, no writ); Kneuper, 768 S.W.2d
at 460. In Worsham, the court of appeals concluded that mental anguish "includes mental
sensation of pain resulting from such painful emotions as grief, severe disappointment,
indignation, wounded pride, shame, despair and/or public humiliation." Worsham, 831 S.W.2d
at 85-86. 

 In the present case, appellee Hart testified that he missed his job; that he no longer
felt excitement in the type of work he did; that his life was less focused than before his
termination; and that he has friends in the sheriff's department who no longer speak to him
because they fear disciplinary actions will be instituted against them. Hart described his
depression as "I just don't feel like doing anything, just coming home and sitting down." Hart
also testified about the effect on him of the media publicity surrounding the case:



Q: Mr. Hart, do people in the community come up and talk to you about the fact
that you have been terminated?


A: Oh, yes, sir, they have.


Q: It was publicized that you were terminated; is that correct?


A: Yes. It was in the paper.


Q: Have you been called a disgruntled employee or other names of that sort?


A: Yes, sir. I've been a disgruntled employee, an employee with a bad attitude,
all kinds of things like that.


Q: That's been put in the newspaper and on the TV in Wichita Falls?


A: Yes sir.


 . . .


Q: How has this caused you to feel knowing that you've been terminated and
you've been called these names?


A: Just angered and embarrassed. I think about it every day that I just can't--I
can't go back to work there. . . . I used to get up every morning just raring
to go to work and now I don't. I couldn't wait until the next day when I was
in law enforcement, and now I can't go back there.



 Williams testified that the termination caused problems in his marriage because it
created a financial strain. (15) He also stated that he had suffered much embarrassment from the
media coverage of the case because he was called a disgruntled employee. Williams also explained
that, as a result of the publicity, he no longer shopped in Wichita County because people
constantly approach him to comment on the termination. Williams also discussed how the
termination reduced his ability to sleep from eight hours to only three or four hours a night.

 We hold that the evidence presented at trial was legally and factually sufficient to
support an award of past mental anguish. The evidence clearly indicates that, at a minimum,
appellees suffered public humiliation and shame as a result of their termination. We also conclude
that the jury could reasonably infer that the appellees would continue to suffer mental anguish in
the future. The County relies on Kneuper to support its contention that there is no evidence to
support the jury's award. In Kneuper, we concluded that the record was devoid of any evidence
to support the issue of future mental anguish because the plaintiff had been reinstated. Kneuper,
768 S.W.2d at 461. Those circumstances are distinguishable from the situation presented in the
instant cause. Hart and Williams have not been reinstated, nor is either one of them currently
working in law enforcement. Both testified that, four years after the termination, they were still
depressed and embarrassed about it. Therefore, the rationale underlying the determination in
Kneuper is inapplicable here. We conclude that the evidence supports the jury's inference that
the appellees would continue to suffer mental anguish in the future. Point of error five is
overruled. 



C. Exemplary Damages

 The County also challenges the legal and factual sufficiency of the evidence to
support the jury finding that the sheriff acted with malice in terminating the appellees. To award
exemplary damages under the Whistleblower Act, a jury first must find that there was malice. 
Kneuper, 768 S.W.2d at 456-57. 

 The jury instruction submitted at trial defined malice as "ill-will or evil motive, or
such gross indifference to or reckless disregard of the rights of others as will amount to a willful
or wanton act." (16) In its brief, the County argues that the sheriff's actions were not motivated by
the spite, ill will, or evil intent necessary to show that the sheriff acted with malice in his decision
to terminate. The County, however, does not challenge the possibility that the jury could have
found that the sheriff acted with gross indifference to or reckless disregard of the rights of the
appellees. By failing to challenge the jury's finding under the complete definition used by the trial
court, we conclude that the County has waived its eighth point of error. 

 If we were to address this point, however, we would conclude that the evidence was
sufficient to support the jury's finding that the sheriff's decision to terminate was motivated by
malice. Appellees offered evidence at trial that the chief deputy wrote on each appellee's
personnel file that he was being terminated because he "initiated an investigation against the
sheriff which allegations never happen [sic]." Cross, the District Attorney's investigator, testified
that Sheriff Callahan demanded the identity of the complainants during their meeting to discuss
the allegations. When the appellees' names were revealed, Cross testified that the sheriff's
response was "they had seen their last day in the sheriff's office." Sheriff Callahan never
attempted to discuss with either Hart or Williams their reasons for initiating the investigation. 
Hart was terminated the same day Callahan received the information from Cross, and Williams'
termination occurred two days later. 

 The County's witnesses offered a different version of the events in question. 
District Attorney Barry Macha testified that the sheriff requested his opinion regarding whether
grounds existed to terminate the appellees. Sheriff Callahan testified that he fired Hart because
of his disloyalty to the sheriff and his inability to get along with co-workers. The stated reasons
for Williams' termination were his failure to supervise personnel, his inability to function with
his co-workers, and his disloyalty to the sheriff. Judge Juanita Pavlick, a former attorney with
the District Attorney's Office, testified that she met with Sheriff Callahan when she became aware
of the possibility of a whistleblower claim, and that she advised him during the meeting that she
did not believe he had violated the Act. 

 The testimony offered at trial concerning the circumstances under which the
appellees were fired clearly conflicts. We are mindful, however, that a jury is permitted to
believe some witnesses and disbelieve others. McGalliard, 722 S.W.2d at 697. Cross' testimony
provides some evidence to support the jury's verdict. Under the factual sufficiency standard
articulated in Pool, the finding of the jury was not so against the great weight and preponderance
of the evidence as to be manifestly unjust. Pool, 715 S.W.2d at 635. 



County's Liability for Acts of the Sheriff


 In its ninth point of error, the County challenges its liability for the wrongful acts
of the sheriff because he is an independently elected official whose actions the governing body of
the County is prohibited from interfering with or controlling. The crux of the County's argument
is that the governmental body of a county is the commissioners court, and therefore, since
appellees were employed by an independently elected sheriff, the County is not responsible for
the appellees' termination in violation of the Whistleblower Act. 

 The Whistleblower Act prohibits a local government from terminating a public
employee who reports a violation in good faith. Tex. Gov't Code Ann. § 554.002 (West 1994). 
A public employee is one "who, for compensation, performs services for a state or local
governmental body under a written or oral contract." Tex. Gov't Code Ann. § 554.001(3) (West
1994). The Act specifies that "local government" includes a county, but does not define what
offices constitute a county. Tex. Gov't Code Ann. § 554.001(2)(A) (West 1994). The County
asserts that we should adopt the definition of "local government body" that is recognized under
the Open Records Act, and conclude that the local government body under the Whistleblower Act
is only the county commissioners court. Tex. Gov't Code Ann. § 552.003(a)(2) (West 1994). 
The County further argues that it should not be held vicariously liable under a theory of
respondeat superior for the acts of Sheriff Callahan because it had no authority to control those
actions. 

 No case has addressed the issue of what governmental offices constitute the county
for purposes of the Whistleblower Act. In Renken v. Harris County, 808 S.W.2d 222, 226 (Tex.
App.--Houston [14th Dist.] 1991, no writ), the court of appeals held that a commissioners court
has no authority to reinstate an employee who has been terminated from his job in an elected
official's office. The County requests that we analogize the present cause to Renken and conclude
that the County is not responsible for the sheriff's actions. Renken, however, did not address the
issue presented here regarding whether an elected county official can be considered the county for
purposes of the Whistleblower Act. 

 The appellees respond that the County has misconstrued the use of "local
government body," and that the county as whole, including the sheriff, is the government body. 
Statutory support for the appellees' proposition is found in the Texas Local Government Code.
The heading of Title Three of the Code is "Organization of County Government," and Subtitle
B, which includes both the commissioners court and the sheriff, is titled "Commissioners Court
and County Officers." See Tex. Loc. Gov't Code Ann. §§ 81.001-.043 & 85.001-.023 (West
1988 & Supp. 1994). It is apparent from the statutes organizing counties that a sheriff was
intended to be included as an integral part of county government. See id. 

 The appellees argue that a sheriff should be regarded as a part of county
government. In County of Brazoria v. Radtke, 566 S.W.2d 326, 328-29 (Tex. Civ.
App.--Beaumont 1978, writ ref'd n.r.e), the sheriff was held not to be a unit of government
separate from the county in a claim brought under the Texas Tort Claims Act. See Act of May
22, 1969, 61st Leg., R.S., ch. 292, 1969 Tex. Gen. Laws 874 (Tex. Rev. Civ. Stat. Ann. art.
6252-19, since repealed). In Radtke, Brazoria County was held liable for injuries the plaintiff
sustained in an automobile accident caused by the negligent actions of a deputy sheriff. Radtke,
566 S.W.2d at 329. The county contended that it could not be held liable for the acts of the
deputy sheriff because it did not have the legal right to control the deputy's actions. The court
of appeals disagreed, finding that the general purpose of the Act precluded the definition of the
sheriff as a separate unit of government from Brazoria County. Id. at 328. The County argues
that we should distinguish Radtke from the situation presented here because the Tort Claims Act
contained a provision which specified that the Act applied to every person in a unit of
government, whether elective or appointive. We agree with the County that the Whistleblower
Act contains no similar provision. The County, however, ignores the Radtke court's emphasis
on policy in reaching its conclusion that the sheriff and Brazoria County were the same unit of
government. The Beaumont court noted that the legislative intent underlying the Tort Claims Act
would be thwarted if Brazoria County could be held liable only for the acts of the employees of
the commissioners court. Id. at 329. Despite the fact that the Whistleblower Act contains no
similar provision, we do not believe that the Legislature intended "county" to be construed as
narrowly as the County urges us to do here. (17)
 In the absence of specific language to the contrary,
we refuse to hold that the Whistleblower Act was intended to cover only county employees who
are employed by the commissioners court. We agree with the conclusion in Radtke that the
county as a whole constitutes the governmental unit. We hold that the sheriff is a part of the
County's government when he is acting in his official capacity, and consequently the County is
liable for his misdeeds. (18) We therefore overrule point of error nine. 



Constitutionality of the Whistleblower Act


 In its tenth point of error, the County alleges that the Whistleblower Act is
unconstitutional because it denies due process, is void for vagueness, and violates separation of
powers. 

 The County's due process claim arises from its perception that to hold it liable for
the acts of the sheriff is to impose vicarious liability for actions over which it has no control. 
Having previously held that a sheriff represents the county for purposes of the Whistleblower Act,
no vicarious liability is being imposed on the County, and thus no violation of due process has
occurred.

 In its contention that the statute is void for vagueness, the County asserts that,
because of the statute's vague prohibition, courts have been forced to construe the statute liberally. 
The County offers as examples the appellate courts' constructions of the terms "violation of law,"
"appropriate law enforcement authority," and "good faith." A statute is void for vagueness if it
is "incomplete, vague, indefinite and uncertain and it forbids the doing of an act which is so
vague, that men of common intelligence must necessarily guess at its meaning and that such men
differ as to application . . . ." Sanders v. State Dep't of Pub. Welfare, 472 S.W.2d 179, 182
(Tex. Civ. App.--Corpus Christi 1971, writ dism'd). We believe, however, that the statute's
remedial purpose justifies the interpretations that courts have engrafted onto the Act. As one
court noted, the Act "is designed to enhance openness in government and compel the
government's compliance with the law by protecting those who inform authorities of wrongdoing.
. . . Accordingly, we construe this statute liberally, and in accordance with its remedial purpose." 
Castaneda, 831 S.W.2d at 503. See Green, 855 S.W.2d at 142. The supreme court has explained
that the language of an act should not be construed so as to defeat the general purposes of the act:



It is settled that the intention of the Legislature controls the language used in an
act, and in construing such act the court is not necessarily confined to the literal
meaning of the words used therein, and the intent rather than the strict letter of the
act will control.



Woods v. Littleton, 554 S.W.2d 662, 665 (Tex. 1977) (quoting City of Mason v. West Tex. Utils.
Co., 237 S.W.2d 273, 278 (Tex. 1951)). In light of the purposes underlying the Whistleblower
Act, the appellate courts' various interpretations all effectuate the goals of the Act. We hold that
the statute is not void for vagueness. 

 Finally, the County argues that the statute violates separation of powers because
it permits taxation without representation by authorizing unelected jurors to award punitive
damages against a local governmental body. In Green, we concluded that this argument was
untenable as applied to state agencies because a plaintiff must request a legislative appropriation
to collect the awarded damages. Green, 855 S.W.2d at 145. No similar requirement exists for
damages awarded against local governments. Plaintiffs are required, however, to present their
claims to the commissioners court to receive satisfaction of their judgments. Tex. Loc. Gov't
Code Ann. § 81.043 (West 1988). Plaintiffs are expressly prohibited from satisfying their
judgments by issuing a writ of execution on county property or funds. Id. Therefore, judgments
for the appellees in this case will be satisfied only through an act of the commissioners court, and
thus, we hold that there is no separation of powers violation. Because we have determined that
the Whistleblower Act does not violate any constitutional mandates, we overrule the County's
tenth point of error. 



CONCLUSION 


 Having overruled all of the County's points of error, we affirm the judgment of the
trial court. 



 

 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Affirmed

Filed: October 12, 1994

Publish 
1. Appellees' claim was brought under Tex. Rev. Civ. Stat. Ann. art. 6252-16a, which
has since been repealed and codified into the Government Code. Act of May 22, 1993,
73d Leg., R.S., ch. 268, §§ 1 & 47, 1993 Tex. Gen. Laws 609, 986 (codified at Tex. Gov't
Code Ann. §§ 554.001-.009 (West 1994)). Because no substantive changes have been
made in the provisions at issue here, we cite the current code for the sake of convenience.
2. [2]  In nine of its ten points of error, the County raises points of error regarding legal and
factual sufficiency of evidence, denial of several jury instructions, application of the
Whistleblower Act to the sheriff, and various provisions of our Texas Constitution.
3. [3]  Of course, a party may waive its right to mandatory venue if an objection is not made
"by written motion filed prior to or concurrently with any other plea, pleading or motion
except a special appearance motion provided for in Rule 120a." Tex. R. Civ. P. 86(1).
4. [4]  Either party may file a motion for change of venue, regardless of whether venue is
proper where suit has been filed, if the party cannot obtain an impartial trial for one of three
reasons stated under the rule or for good cause. Tex. R. Civ. P. 257.
5. [5]  Subchapter B, Tex. Civ. Prac. & Rem. Code Ann. §§ 15.011-.017 (West 1986). Under
the predecessor of the current venue statute, mandatory and permissive exceptions to the
general venue provision were not distinguished; courts interpreted the exceptions to be either
mandatory or permissive. See Act of June 17, 1983, 68th Leg., R.S., ch. 385, 1983 Tex.
Gen. Laws 2119 (Tex. Rev. Civ. Stat. Ann. art. 1995, since repealed). In grouping the venue
exceptions under the headings "Mandatory Venue" and "Permissive Venue" in subchapters B
and C, respectively, the legislature reaffirmed some judicial interpretations while abandoning
others. Southern Pac. Transp. Co. v. Harlow, 729 S.W.2d 946, 949 (Tex. App.--Corpus
Christi 1987, writ denied sub nom. Port Terminal R.R. Ass'n v. Harlow, 745 S.W.2d 320
(Tex. 1988)); 72 Tex. Jur. 3d Venue § 10 (1990).
6. [6]  See, e.g., Calvert v. Hall, 514 S.W.2d 778, 779 (Tex. Civ. App.--Austin 1974, writ
dism'd) (holding jurisdictional Texas Revised Civil Statutes Annotated articles 7057b and
1.05, which provided that suits to determine liability of inheritance taxes shall be brought "in
any court of competent jurisdiction in Travis County, Texas, and none other") (emphasis
added); Morrow v. State, 509 S.W.2d 726, 727 (Tex. Civ. App.--Austin 1974, no writ)
(holding jurisdictional Texas Revised Civil Statutes Annotated article 1.04, which provided
that "[v]enue and jurisdiction of all [such] suits . . . is hereby conferred upon the courts of
Travis County") (emphasis added).
7. [7]  Act of June 19, 1983, 68th Leg., R.S., ch. 832, § 3, 1983 Tex. Gen. Laws 4751, 4752. 
While the caption of the venue provision now reads "Where Suit Brought," this heading was
added as part of the nonsubstantive codification of the Whistleblower Act into the Government
Code. Act of May 22, 1993, 73d Leg., R.S., ch. 268, § 47, 1993 Tex. Gen. Laws 583, 986.
8. The title of the Act was later changed to the gender-neutral form, Workers'
Compensation Act, which we shall use throughout the balance of the opinion.
9. [9]  Section 15.016, titled "Other Mandatory Venue," states, "An action governed by any
other statute prescribing mandatory venue shall be brought in the county required by that
statute." Section 15.038, titled "Other Permissive Venue," states, "An action governed by any
other statute prescribing permissive venue may be brought in the county allowed by that
statute."
10. We are authorized to presume that, in enacting a statute, the Legislature intended
"a just and reasonable result." Tex. Gov't Code Ann. § 311.021(3) (West 1988); West
Anderson Plaza v. Feyznia, 876 S.W.2d 528, 532 (Tex. App.--Austin 1994, no writ h.).
11. The County's requested definition provided:


 "Made in good faith" means (1) that the employee undertook
to report the activities in the workplace in good faith rather
than as a result of some less admirable motive such as malice,
spite, jealousy, or personal gain and (2) the employee had
reasonable cause to believe that the activities reported were a
violation of law.

 

 The trial court refused to adopt this definition and instead instructed the jury: 


 "Good faith" means honesty in fact in the conduct concerned. A
report of a violation of law may be in good faith even though it is
incorrect, as long as the belief is not unreasonable.


12. The appellate courts that have considered this issue have all approved of the Lastor
approach. See Texas Dep't of Human Servs. v. Hinds, 860 S.W.2d 893, 897 (Tex. App.--El
Paso 1993, writ granted); Castaneda v. Texas Dep't of Agric., 831 S.W.2d 501, 504 (Tex.
App.--Corpus Christi 1992, writ denied); City of Houston v. Leach, 819 S.W.2d 185, 194
(Tex. App.--Houston [14th Dist.] 1991, no writ).
13. Section 554.003 specifies the types of remedies that a plaintiff can recover for a
violation of the Whistleblower Act:


 (a) A public employee whose employment is suspended or
terminated or who is discriminated against in violation of
Section 554.002 is entitled to sue for:

 (1) injunctive relief;

 (2) actual damages;

 (3) exemplary damages;

 (4) court costs; and

 (5) reasonable attorney fees.


 (b) In addition to relief under Subsection (a), a public
employee whose employment is suspended or terminated in
violation of this chapter is entitled to:

 (1) reinstatement to the employee's former position;

 (2) compensation for wages lost during the period of 
 suspension or termination; and

 (3) reinstatement of fringe benefits and seniority rights
lost because of the suspension or termination.
14. We observe that several personal injury cases have noted that lost wages are
evidence of loss of earning capacity. See McIver v. Gloria, 169 S.W.2d 710, 712 (Tex.
1943) (describing lost wages as a measure of lost earning capacity); Springer v. Baggs, 500
S.W.2d 541, 544-45 (Tex. Civ. App.--Texarkana 1973, writ ref'd n.r.e.) (stating that lost
future earnings is only one of many methods to show loss of earning capacity); Greyhound
Lines, Inc. v. Craig, 430 S.W.2d 573, 575 (Tex. Civ. App.--Houston [14th Dist.] 1968, writ
ref'd n.r.e) (noting that the amount of earnings lost in the future is evidence of diminished
earning capacity). Since capacity to earn has generally been the broader damage submission,
it is difficult to see how the County could be harmed by the submission of the narrower
damage element, i.e., lost wages. 
15. Williams and his wife eventually divorced. Although he attributed some of the
blame for the divorce to his termination, he did admit that he and his wife were
experiencing marital difficulties before the termination occurred.
16. The court defined "wanton" as "undisciplined, unruly, marked by arrogant
recklessness of justice, feelings of others, or the like; willful and malicious."
17. Appellees correctly argue that the County's assertion that the terms "county" and
"local government" refer only to the commissioners court would exclude a large portion of
the county employees in Texas from the protection of the Act since they are employed by
independently elected officials.

18. Our opinion is bolstered by federal decisions. The Fifth Circuit has previously held
that a county may be held liable for the acts of a county official, such as a sheriff, who
has final authority over certain decisions. Familias Unidas v. Briscoe, 619 F.2d 391, 404
(5th Cir. 1980).